379 P.2d 792

**L. M. WELLER, Plaintiff-Respondent,**

**v.**

**E. R. HOPPER, Commissioner, Department of Law Enforcement for the State of Idaho, and the State of Idaho, Defendants-Appellants.**

No. 9222.

Supreme Court of Idaho.

March 11, 1963.

Frank L. Benson, Atty. Gen., R. LaVar Marsh, Asst. Atty. Gen., Boise, for appellants.

James W. Ingalls, Coeur d'Alene, for respondent.

SMITH, Justice.

Respondent brought this mandamus proceeding to compel transfer to him of a retail liquor license theretofore issued to another, since deceased, the decedent's personal representative desiring to transfer the license if permitted to do so. This appeal it from a summary judgment granting such relief.

Respondent, while licensed by the Department of Law Enforcement of the State of Idaho to sell liquor by the drink at retail, pursuant to the provisions of Idaho Code, Tit. 23, ch. 9, on May 23, 1955, was convicted of the crime of receiving stolen government property,—a felony,—by the United States District Court, Northern Division of Idaho, and duly served a 90-day jail sentence therefor. Upon his conviction, the Department of Law Enforcement revoked respondent's retail liquor license.

April 2, 1962, respondent made application in proper form to appellant, Commissioner of the Department of Law Enforcement, for the transfer to him, respondent, of the retail liquor license theretofore issued to B. W. Shafer, doing business as Boots and Saddle, in Coeur d'Alene, Idaho. Appellant denied the application, basing the denial on the ground of respondent's previous conviction of the aforementioned felony, admittedly not involving the sale or use of intoxicants, which conviction, pursuant to I.C. § 23–910, subd. d, disqualified respondent from ever being issued a liquor license in this state.

Shafer is deceased; his surviving widow, decedent's administratrix, is willing to transfer such license to respondent if by lawful authority.

Upon appellant Commissioner's denial of respondent's application for the transfer of

the Shafer liquor license, respondent petitioned the district court for a writ of mandamus directing appellant to approve the transfer of the license. He also sought a declaratory judgment declaring the right and qualifications of respondent to the transfer of the license by the personal representative of Shafer, deceased. Appellants answered, raising no issue of fact. Each party thereupon moved for summary judgment.

The trial court, holding in favor of respondent, ruled that I.C. § 23–910, subd. d is unconstitutional as applied to respondent in that it denies him equal protection of the laws in violation of Idaho Const. Art. I, § 2; also ruled that I.C. § 23–908 did not preclude the transfer of decedent's license by the personal representative and that the license is transferable because it is a property right by reason of the limitation of the license statute, I.C. § 23–908.

The trial court in granting summary judgment in favor of respondent ordered appellants to grant respondent's application for transfer of the license, and decreed that decedent's administratrix could transfer the license to respondent. Appellants have appealed.

Certain provisions of I.C. § 23–910, to be considered in this proceeding, read:

"Persons not qualified to be licensed.

—No license shall be issued to:

\* \* \* \* \* \*

"b. Any person \* \* \* who has been convicted of any felony or has paid any fine or completed any sentence of confinement for any felony within five years prior to the date of making application for a license.

\* \* \* \* \* \*

"d. A person whose license issued under this act has been revoked \* \* \*.

\* \* \* \* \* \*

"h. Any license, held by any licensee disqualified under the provisions of this section from being issued a license, shall forthwith be revoked by the commissioner."

It thus appears, pursuant to the quoted provisions of I.C. § 23–910, that under the subsection b no liquor license can be issued to a person who has been convicted of a felony, paid any fine or completed any sentence of confinement for any felony, within five years prior to the date of making application for the license. But a person who had a license at the time of his conviction of a felony, and whose license for that reason had been revoked under subsection h would, because of subsection d, be forever disqualified from obtaining a license. Thus, if respondent had not held a liquor license at the time of his conviction of a felony in 1955, he would, five years' later, have become eligible for a liquor license.

But since respondent did have a liquor license at the time of his felony conviction, which license was revoked because of such conviction, subsection d would forever prohibit him from obtaining a liquor license. Thus there appears to be an attempted legislative classification whereby a person, who held a liquor license when convicted of a felony, is forbidden the benefits of the liquor licensing statute; whereas a person who is not a liquor licensee at the time of his felony conviction is not forbidden the benefits of such statute.

"Within extremely broad limits the state legislatures may control practices in the business-labor field, as long as specific constitutional provisions are not violated, and as conflicts with valid and controlling federal laws are avoided, and the states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs. Accordingly, although * * * the right to labor and the right to enjoy the rewards thereof are natural rights protected by the various constitutions, the right of engaging in a lawful business or occupation is subject to regulation under the police power, * * *.

"The right to labor and the right to enjoy the rewards thereof, however, may not be unreasonably interfered with by legislation; and the power to regulate a business or occupation does not necessarily include the power to exclude persons from engaging in it. * * * A state may not, under the guise of protecting the public, arbitrarily interfere with or prohibit private businesses or lawful occupations, and any regulation must be reasonable in its nature and directed to the prevention of the evils, and adapted to the accomplishment of the avowed purposes." 16 C.J.S. Constitutional Law § 188, pp. 925–930.

In State Board of Dry Cleaners v. Thrift-D-Lux Cleaners, 40 Cal.2d 436, 254 P.2d 29, California's Supreme Court held a statutory enactment to be unconstitutional, which attempted to authorize the State Board of Dry Cleaners to establish minimum price schedules for cleaning, dyeing and pressing. The Court said:

"If the statute can be sustained as constitutional it is because it is a reasonable exercise of the police power of the state. Under the law generally that power extends to legislation enacted to promote the public health, safety, morals and general welfare. It has rightly been said that 'Such [police] regulations may validly be imposed if they constitute a reasonable exertion of governmental authority for the public good. If there is a proper legislative purpose, a law enacted to

carry out that purpose, if not arbitrary nor discriminatory, must be upheld by the courts.' [Citation.] However, in the exercise of the police power the law places limits on the discretion of the legislature. Whether there has been a reasonable exercise of this power is a court question."

■ While a legislative act is presumed to be constitutional, Rich v. Williams, 81 Idaho 311, 341 P.2d 432, whether it is reasonable and not arbitrary or discriminatory is a question of law for determination by the court, State v. Rorvick, 76 Idaho 58, 277 P.2d 566; Christian v. La Forge, 194 Or. 450, 242 P.2d 797; General Electric Company v. Wahle, 207 Or. 302, 296 P.2d 635; Neary v. Town of Los Altos Hills, 172 Cal.App. 721, 343 P.2d₀ 155; Remington Arms Company v. Skaggs, 55 Wash.2d 1, 345 P.2d 1085; 16 C.J.S. Constitutional Law, § 195. See also White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778. For a scholarly discussion of the police power of a state, see Rowe v. City of Pocatello, 70 Idaho 343, 349–350, 218 P.2d 695 (1950).

Appellants assign error committed by the trial court in ruling that the provisions of I.C. § 23–910, subd. d are unconstitutional as applied to respondent in that such provisions deny him equal protection of the laws. U.S.Const. 14th Amendment; Idaho Const. Art. I, § 2.

Respondent contends that the legislative classification must meet the test, that it be based upon legitimate grounds of difference between the persons classified, and have some direct, real and substantial relation to the public object sought to be served. He argues that there is no difference between a felon, licensed to sell intoxicating liquor at the time of his conviction, and a felon not licensed to sell intoxicating liquor. He contends that I.C. § 23–910, subd. d as applied to this case is an arbitrary and unreasonable exercise of the police power of the state, violative of the constitutional protection of the "equal protection" clause.

Appellants contend that those who are licensed are in a position of trust, and that any violations of that trust indicate disregard for the privilege granted. They argue that a violation of the trust granted is indicative of the lack of the necessary qualifications contemplated by the legislature; that equal protection and security are given to all under like circumstances, and that therefore respondent was not denied equal protection of the law.

In State v. Crosson, 33 Idaho 140, 190 P. 922, appellants were convicted of violating C.S., §§ 2439 and 2440 which attempted to prohibit common carriers, as classified by C.S., § 2380, subsec. 3., from carrying freight or passengers, or both, until they first had obtained licenses, and had given bond; C.S., § 2440 further provided that

any person operating as a common carrier, as defined in C.S., § 2380, subsec. 3., without complying with such requirements, should be guilty of a misdemeanor; but C.S., § 2380, subsec. 3. expressly exempted hotel busses operating solely between hotels and trains, and automobiles and auto trucks used for carrying United States mail. The prescribed license tax, observed the Court, was placed "upon the business in which the motor vehicle operating as common carrier is engaged," and not "upon the operation of the motor vehicle upon the road as such." The Court then held that such sections of the statute, as applied to appellants, were unconstitutional, because "[n]o justification or reason exists for the classification," and were violative of the due process clause of Idaho's Const. Art. I, § 13. One Justice expressed the additional view that the statute denied appellants equal protection of the law.

In O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R. 1031, this Court, in holding a provision of a city ordinance to be unconstitutional, said: "The provision in question declaring a change in ownership to be a new business is an arbitrary and unreasonable exercise of the police power and violates the constitutional protection given by the due process clauses." The Court further held that while a license to operate a beer parlor or pool hall does not confer any vested property right, yet if the city makes such businesses lawful by a permit or license, it cannot arbitrarily, capriciously or unreasonably impair, interfere with, or eradicate the same.

It is the opinion of this Court that the particular provision of the statute, I.C. § 23–910, subd. d, is unconstitutional as applied to respondent, in that it denies to respondent equal protection of the laws in violation of U.S.Const. 14th Amendment, and Idaho's Const. Art. I, § 2. The classification, attempted to be set up by such statutory provision, is unreasonable, arbitrary and discriminatory; it attempts discrimination against one who happened to hold a retail liquor license at the time of his conviction of a felony, as against one who did not hold such a license at the time of his felony conviction; no reasonable ground or basis for such a distinction between them, as prospective licensees, exists.

The remaining issue, presented by appellants' assignments, is whether the personal representative of the licensee's estate has the right to transfer the retail liquor license to respondent.

I.C. § 23–908 provides:

"* * * Every license issued under the provisions of this act is separate and distinct and no person except the licensee therein named except as herein otherwise provided, shall exercise any of the privileges granted thereunder * * *. Application to transfer

any license issued pursuant to chapter 9, Title 23, Idaho Code, shall be made to the commissioner. Upon receipt of such an application, the commissioner shall make the same investigation and determinations with respect to the transferee as are required by section 23–907, Idaho Code, and if the commissioner shall determine that all of the conditions required of a licensee under chapter 9, Title 23, Idaho Code, have been met by the proposed transferee, then the license shall be endorsed over to the proposed transferee by said licensee for the remainder of the period for which such license has been issued and the commissioner shall note his approval thereof upon such license."

A résumé of the facts concerning this issue is apropos here. Respondent on April 2, 1962, made application to appellant commissioner for the transfer of the liquor license issued to B. W. Shafer. Appellant rested his denial of this application on the pertinent provisions of Idaho Code, § 23–910. Respondent applied to the district court for a writ of mandamus directing appellant to approve the transfer. Appellant moved to dismiss the proceeding, and before the motion was heard, B. W. Shafer, the licensee, died. Shafer's widow was appointed administratrix of the licensee's estate, and is willing to transfer the license to respondent.

Appellants contend that the statutes which are applicable to the transfer of a retail liquor license make it clear that the legislature intended that a liquor license is a grant of only a personal privilege to the licensee, which privilege ceases upon the death of the licensee; further that a liquor license is not transferable by operation of law because the licensee's death terminates the license.

Respondent contends that the provisions of I.C. § 23–908 do not provide that no other person than the licensee can transfer the license. He asserts that the words used in the transfer provisions of such section of the statute are not such as would require a personal endorsement of the licensee, and are broad enough to include personal representatives, trustees, and other persons who are empowered to exercise the rights of a licensee by operation of law. Respondent further asserts that the trial court properly construed the liquor license to be a right, transferable by the personal representative.

Appellants urge the holding of Nampa Lodge No. 1389, etc., v. Smylie, 71 Idaho 212, 229 P.2d 991 (1961), wherein this Court held that a liquor license is simply a grant or permission under governmental authority to the licensee to engage in the business of selling liquor, in language as follows: "Such a license is a temporary permit to do that which would otherwise be unlawful; it is a privilege rather than a natural right

and is personal to the licensee; it is neither a right of property nor a contract, or a contract right."

Respondent, however, in his argument, pointed out that the Legislature, in 1959, amended I.C. § 23–903 to provide a limitation on the number of licenses that may be issued, based upon population, the salient portions of the amendment reading:

"* * * the number of licenses so issued for any city or village shall not exceed one license for each 1,500 of population of said city or village, or fraction thereof, as established in the last preceding census, except that upon proper application thereof not more than two licenses may be issued for each incorporated city or village with a population of 1,500 or less, * * * provided, however, that any license theretofore issued may be renewed from year to year without regard to the population of the city or village for which such license is issued." S.L. 1959, ch. 118.

As between the State and the licensee we recognize that the holding of Nampa Lodge No. 1389, etc., v. Smylie, supra, has remained unchanged. Respondent's contention, however, must be analyzed in the light of the amendment to I.C. § 23–903; also the provision of I.C. § 23–908 which, after the commissioner's investigation of the proposed transferee, recognizes the right of transfer of the license by endorsement by the licensee and not by the commissioner, who but notes his approval of the transfer. The provisions of the two referred to sections of the statute connote that a liquor license as between the licensee and third persons constitutes a right to which value as property and assignability is attributed and, therefore, as between the licensee and third persons such right upon death of the licensee becomes assignable by the personal representative.

Appellants cite Harding v. County Board of Equalization, 90 Neb. 232, 133 N.W. 191, 37 L.R.A.,N.S., 455 (1911), as authority for their contention that a liquor license is terminated by the death of the licensee. That case, as did the case of Roehm v. Orange County, 32 Cal.2d 280, 196 P.2d 550, involved the issue, as between the sovereign and the licensee, whether a privilege, granted by the state to a licensee to sell intoxicating liquor, is subject to taxation. Both cases recognized that such a privilege is purely personal as between the state and the licensee. However, the California court, in Roehm v. Orange County, supra, recognized that as between the licensee and third persons, the license may be regarded as a property right with attributes of value and assignability.

In re Ryan's Estate, 375 Pa. 42, 99 A.2d 562, also cited by appellants, does not support appellants' position, since that case

involved only the question whether a liquor license, which belonged to a licensee since deceased, regarded and appraised as an asset of decedent's estate, was subject to taxation. The Pennsylvania court, in holding that the license was not an asset of decedent's estate and not subject to taxation, recognized, under the Pennsylvania statute, 47 P.S. § 4–468 (1937), that a liquor license or a privilege to sell liquor for a specified time, although often very valuable, did not become an asset of the licensee's estate upon death, inasmuch as such a license was subject to transfer by the liquor control board to a third person, and not by the personal representative of the estate. Idaho's statute, I.C. § 23–908, however, as hereinbefore shown, authorizes endorsement with the commissioner's approval noted thereon. The term "endorsement" implies "a transfer by a writing upon the instrument." Paine v. Smith, 33 Minn. 495, 24 N.W. 305, 306; 42 C.J.S. Indorsement or Endorsement p. 1368. It is implicit in the context of I.C. § 23–908 that the endorsement shall accomplish transfer of the license.

We therefore conclude that appellants' assignments of error are without merit.

The judgment of the district court is affirmed. Costs to respondent.

McQUADE, McFADDEN and TAYLOR, JJ., and TOWLES, D. J., concur.